**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

AVOW HOSPICE, INC., a Florida
nonprofit corporation

      Plaintiff,

v.                                        Case No.: 2:23-cv-132

AVOW FOUNDATION FOR
ABORTION ACCESS, INC.,
AVOW, INC. and AVOW PAC

      Defendants.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FIRST AMENDED COMPLAINT AND INCORPORATED
MEMORANDUM OF LAW**

---

Plaintiff, Avow Hospice, Inc., by and through its undersigned attorneys, files its

response to Defendant's Motion to Dismiss First Amended Complaint and states as

follows:

## INTRODUCTION

Defendants seek to dismiss all claims in Plaintiff's First Amended Complaint for

lack of personal jurisdiction and failure to state a claim under Federal Rules of Civil

Procedure 12(b)(2) and 12(b)(6). In their Motion, Defendants assert that Plaintiff has not

alleged facts that show Defendants' "intentionally directed their allegedly tortious

behavior to Florida . . . [and] did not intentionally target Florida in any way" and that

therefore, the Court does not have specific personal jurisdiction over Defendants. Further, Defendants claim that Plaintiff has not adequately alleged facts that would establish a likelihood of confusion.

Plaintiff contends that it has set forth facts sufficient to support this Court's personal jurisdiction over Defendants as well as in support of its claims of trademark infringement and unfair competition.

## LEGAL STANDARD

To survive a Motion to Dismiss, a complaint must allege sufficient facts, accepted as true, to state a plausible claim for relief.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1939 (2009). Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a short and plain statement of the claim showing the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Although Rule 8 does not require a claimant to set out in detail the facts upon which he bases his claim, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft, at 1939.  "A motion to dismiss tests the sufficiency of the complaint, not the merits of a suit." Levy v. City of Hollywood, 90 F. Supp 2d 1344, 1345 (S.D. Fla. 2000).  Finally, when considering a motion to dismiss, the Court must do so in the light most favorable to the plaintiff and take the factual allegations therein as true.  See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).

**ARGUMENT**

**I.** **Plaintiff has Pled Facts Sufficient to Establish this Court has Personal Jurisdiction over the Defendants.**

Motions to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure are governed by a two-part analysis. Initially, the court must determine whether the plaintiff has alleged facts sufficient to subject the defendant to the state's long-arm statute. <u>Future Tech. Today, Inc. v. OSF Healthcare Sys.</u>, 218 F.3d 1247, 1249 (11th Cir. 2000). Then, the court must determine whether sufficient minimum contacts exist between the defendant and the forum state, such that jurisdiction does not offend "traditional notions of fair play and substantial justice." <u>Id</u>. The plaintiff bears the initial burden and must allege "sufficient facts to make out a prima facie case of jurisdiction" <u>Estate of Scutieri v. Chambers</u>, 386 F. App'x 951, 956 (11th Cir. 2010). Upon establishing a prima facie case of jurisdiction, the burden shifts back to the defendant to challenge the allegations. <u>Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.</u>, 288 F.3d 1264, 1269 (11th Cir. 2002). If the defendant submits affidavits challenging the allegations, the burden then shifts back to the Plaintiff to substantiate the allegations in the complaint with evidence supporting jurisdiction. <u>Id</u>.

**a. Florida's Long-Arm Statute**

Florida Statute Section 48.193(1)(a) states "a person, whether or not a citizen or resident of this state . . . submits himself . . . to the jurisdiction of the courts of [Florida] for any cause of action arising from any of the following acts: . . . [c]ommitting a tortious act within this state." <u>3lions Publ'g, Inc. v. Interactive Media Corp.</u>, 389 F.Supp. 3d 1031,

1037 (M.D. Fla. 2019).  Trademark infringement is a tortious act under the long-arm statute.  See Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1335 (11th Cir. 2013). Although Section 48.193(1)(a)(2) creates personal jurisdiction for a non-resident's "tortious act within Florida" physical presence "within Florida" is unnecessary.  Volt, LLC v. Volt Lightening Grp., LLC, 369 F.Supp. 3d 1241, 1245 (M.D. Fla. 2109).  "A non-resident can submit to Florida's jurisdiction by transmitting "into Florida" an electronic communication that results in a tort.  Id. (citing Wendt v. Horowitz, 822 So.2d 1252, 1262 (Fla. 2002).  However, a non-resident's website, although accessible in Florida, results in no tort committed within Florida unless a person in Florida views the website.  Internet Solutions Corp. v. Marshall, 39 So.3d 1201, 1252, 1260 (Fla. 2002).  A plaintiff satisfies its initial pleading requirements by tracking the language of the long-arm statute without pleading supporting facts or by alleging specific facts that demonstrate that the defendant's actions fit within one or more subsections of the statute.  3lions Publ'g, at 1037 (citing Wash. Capital Corp. v. Milandco, Ltd., Inc., 695 So. 2d 838, 841 (Fla. 4th DCA 1997).

In its Amended Complaint, Plaintiff alleges that it is the owner of several federal registrations for "AVOW" and marks incorporating "AVOW."  Dkt. 32, ¶¶ 20, 21, 22, 23. Plaintiff further alleges that Defendants have engaged in the commission of tortious acts in the State of Florida and within this Middle District by using the infringing AVOW mark and engaging in fundraising and online retail store activities through, at a minimum, its use of the www.avowtexas.org website to solicit and accept charitable donations and to sell merchandise featuring the infringing AVOW mark. Dkt. 32, ¶¶ 40,

4

43, 44.  Moreover, Defendant's website is accessible to and has been accessed by Florida residents to make charitable donations and to purchase items having the infringing AVOW mark thereon.  Dkt. 32, ¶¶ 41, 42.  In fact, a percentage of Defendants donors used a Florida website and donated via a link on the www.avowtexas.org website.  Dkt. 32, ¶ 42.  See also Dkt. 13.

It has been established through the pleadings that Defendants website www.avowtexas.org is accessible to and has been accessed by Florida residents.  Sales, however small or insignificant, through its website to persons or entities located in Florida is sufficient to establish personal jurisdiction under Florida's long-arm statute.  See 3lions Publ'g, at 1038.  Therefore, Plaintiff has met its burden of establishing personal jurisdiction over Defendants under Florida's long-arm statute.

### b.  Constitutional Due Process

Assuming the requirements of Florida's long-arm statute are satisfied, "[t]he Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has 'fair warning' that he may be subject to suit there."  Shaffer v. Heitner, 433 U.S. 186, 218, 97 S.Ct. 2569 (1977).  "The Eleventh Circuit has held that intentional torts are acts that create a 'substantial connection' with the forum state such that the acts may support the exercise of personal jurisdiction over a nonresident defendant who otherwise has no other contacts with the forum."  3lions Publ'g, at 1039 (See also Licciardello v. Lovelady, 544 F.3d 1280; Calder v. Jones, 465 U.S. 783, 790 (1984)).  "Applying Calder, courts assessing allegations of trademark

infringement have consistently found the minimum contacts inquiry satisfied because trademark infringement is an intentional tort directed toward the state in which the plaintiff is domiciled." R&R Games, Inc. v. Fundex Games, Ltd., No. 8:12-cv-01957-T-27TBM, 2013 WL 3729309, at *6 (M.D. Fla. 2013). In fact, "many courts have employed the Calder "effects" test when the plaintiff's claim involves an intentional tort" rather than the contracts oriented "minimum contacts" test. Licciardello, at 1286. Under the Supreme Court's holding in Calder, a plaintiff is not required to travel to the defendant's residence to obtain a remedy because "an individual injured in Florida need not go to [Texas] to seek redress from persons who, though remaining in [Texas] knowingly cause the injury in Florida." 465 U.S. 783, 790, 104 S.Ct. 1482 (1984). Some courts have applied the traditional minimum contacts test for purposeful availment in cases involving trademark related intentional torts. See, e.g., Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473 (1984); Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158 (2d Cir. 2010); Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003). Under the minimum contacts test for purposeful availment, the court evaluates the nonresident defendant's contacts with the forum and considers whether those contacts "1) are related to the plaintiff's cause of action; 2) involve some act by which the defendant purposefully availed himself of the privileges of doing business with the forum; and 3) are such that the defendant should reasonably anticipate being haled into court in the forum." Malletier v. Mosseri, 736 F.3d 1339 (11th Cir. 2013). Here, Defendants have purposefully solicited business from Florida residents through their interactive commercial website and have accepted donations and sold and shipped merchandise to Florida residents.

When a defendant makes a conscious choice to solicit donations, sell merchandise, and send email communications with the residents of a forum state "it has clear notice that it is subject to suit there . . ." Zippo Mfg. Co. v. Zippor Dot Com, Inc. 952 F.Supp. 1119, 1126 (W.D.Pa. 1997). Further, "[a] nonresident defendant's single tortious act in the forum state can satisfy the effects test, even if the defendant lacks any other contacts with the forum state." Skyhop Techs., Inc. v. Narra, 58 F.4th 1211, 1230 (citing Licciardello, 544 F.3d 1280, 1285 – 86). Moreover, Florida has a strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida. See Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 632 (11th Cir. 1996).

In its Complaint, Plaintiff alleges that it is the owner of several federal registrations for "AVOW" and marks incorporating "AVOW". Dkt. 32, ¶¶ 20, 21, 22, 23. Plaintiff further alleges that Defendants have engaged in the commission of tortious acts in the State of Florida and within this Middle District by using the infringing AVOW mark and engaging in fundraising and online retail store activities. Dkt. 32, ¶¶ 43, 44. Plaintiff further alleges that Defendants have offered for sale and sold in Florida and in interstate commerce goods and services under the AVOW mark. Dkt. 32, ¶ 44, 48. Defendants' www.avowtexas.org website solicits and accepts charitable donations and sells merchandise featuring the infringing AVOW trademark. Dkt. 32, ¶ 40. It is telling that Defendants are not denying the sale of infringing merchandise to Florida residents. Rather, Defendants claim they must have sold "a significant" quantity and that Plaintiff can only "prove" a single sale occurred. If the Defendant had not wanted to be subject to

jurisdiction in Florida, it could have chosen not to solicit and accept donations, sell merchandise, and send email communications to Florida residents.

## II.   Plaintiff has properly Pled Trademark Infringement and Unfair Competition.

Defendants further seek to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.   Counts I and II of the Complaint allege Federal Trademark Infringement and Federal Unfair Competition under 15 U.S.C. § 1125. Plaintiff does not dispute Defendants' assertion that a separate analysis of these claims is unnecessary.

To establish a prima facie case of trademark infringement under 15 U.S.C. § 1125, a plaintiff must show "that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." Tana v. Dantanna's, 611 F.3d 767, 773 (11th Cir. 2010) (citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 358 (11th Cir. 1997) (see also Planetary Motion, Inc. v. Techplosion, Inc., 261 F.3d 1188 (11th Cir. 2001) and Knights Armament Co. v. Optical Systems Technology, 568 F. Supp. 2d 1369 (M.D. Fla. 2008). To satisfy the first element of trademark infringement, a plaintiff need not even have a registered mark. Id. Ownership of a mark under the Lanham Act is determined by use. Id. Use in commerce is defined as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. Planetary Motion, at 1194. However, in contrast to a common-law trademark holder, who is limited by geographic considerations, the owner of a

registered mark "enjoys the unlimited right to use the mark nationwide, and federal registration affords the registrant priority over all future users of confusingly similar marks. <u>Tana</u>, at 780. Moreover, "registration constitutes constructive nationwide notice of the registrant's priority of use of a mark." <u>Id</u>.

When determining whether a likelihood of confusion exists, courts consider the following seven factors: 1) The strength of the allegedly infringed mark; 2) The similarity of the infringed and infringing marks; 3) The similarity of the goods and services the marks represent; 4) The similarity of the parties trade channels and customers; 5) The similarity of advertising media used by the parties; 6) The intent of the alleged infringer; and 7) The existence of actual confusion. <u>See</u> *e.g.*, <u>Fla. Int'l Univ. Bd. Of Trs. V. Fla. Nat'l Univ., Inc.</u>, 820 F.3d 1242, 1255 (11th Cir. 2016); <u>Frehling Enterprises v. Int'l Group Select</u>, 192 F.3d 1330, 1335 (11th Cir. 1999). The test requires an evaluation of the overall balance of the factors. <u>Custom Mfg. and Engineering, Inc. v. Midway Services, Inc.</u>, 508 F.3d 641, 649 (11th Cir. 2007). "The first and last factors – strength of the mark and existence of actual confusion – are the most important." <u>Donut Joe's, Inc. v. Interveston Food Servs., LLC</u>, 101 F.Supp.3d 1172, 1184 (N.D. Ala. 2013) (<u>citing</u> <u>Freedom Sav. & Loan Ass'n v. Way</u>, 757 F.2d 1176, 1186 (11th Cir. 1985).

### a. The Strength of Plaintiff's Marks.

Although Defendants appear to concede the first factor "strength" of the mark weighs in Plaintiff's favor, the strength of the infringed mark is a "vital factor" in determining whether there is a likelihood of confusion. <u>Sun Banks of Florida, Inc. v. Sun Federal Sav. And Loan Ass'n</u>, 651 F.2d 311 (5th Cir. 1981). "A strong mark is usually

fictitious, arbitrary or fanciful and is generally inherently distinctive" and "[i]t is afforded the widest ambit of protection." Id. at 315. An arbitrary mark is a word or phrase that bears no relationship to the product or service. Freedom Sav. & Loan Ass'n, 757 F.2d 1176 at 1182 – 83. Arbitrary marks are the strongest of the marks. Id. Plaintiff's federally registered AVOW marks are arbitrary as to the relationship between the name and the services provided thereunder. Therefore, although this factor clearly weighs in favor of Plaintiff, this factor should be accorded the appropriate weight in the Court's assessment of the seven factors.

b. **Similarity of Marks.**

Again, Defendants appear to concede the second factor in the analysis weighs in favor of Plaintiff, and we agree. Plaintiff and Defendant both use AVOW in connection with their services. The marks do not need to be identical to support a finding of infringement. The question is whether the marks are "sufficiently similar 'to deceive the public'" See Fla. Int'l Univ. Bd. Of Trs., 820 F.3d at 1260 (citing Saxlehner v. Eisner & Mandelson Co., 179 U.S. 19, 33 (1900). In the instant case, the marks are identical. The greater the similarity between the marks, the greater is the likelihood of confusion. Id.

c. **Similarity of Services.**

The third factor "requires a determination as to whether the [services] are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the [services] of the respective parties." Frehling, 192 F.3d at 1338. Of course, the greater the similarity between the services the greater the likelihood of confusion. See Exxon Corp. v. Texas Motor Exch., 628 F.2d 500, 505 (5th Cir.

1980).  The focus is "on the reasonable belief" of the "average consumer" as to the likely source of the services.  Frehling, 192 F.3d at 1339.

Under its federally registered "AVOW" marks, Plaintiff provides health services, including but not limited to, hospice and palliative care, as well as grief and bereavement services to children and adults, as well as operating a retail store.  Dkt. 32, ¶¶ 9, 10, 11, 12, 13.  As many of Plaintiff's services are provided at no cost, Plaintiff is heavily and actively involved in charitable fundraising.  Dkt. 32, ¶¶ 9, 11, 13, 15.  Plaintiff's retail store services are another source of funding for Plaintiff's services.  Dkt. 32, ¶ 12.  Likewise, Defendants are actively engaged in fundraising efforts, including through its retail sales, in support of its mission to advocate for women's access to health care.  Dkt. 33, 36, 40, 41, 42, 45.  However, while Defendants do not actually provide health care services, both Plaintiff and Defendant actively focus on fundraising and retail sales in furtherance of enabling others to access health care services.  Therefore, it is not unreasonable to believe that the services emanate from the same source.  In any event, the similarities are not so remote as to weigh this factor heavily, or at all, in Defendants' favor.

### d.  Similarity of Service Facilities and Customers and Advertising Media.

The fourth factor, similarity of service facilities and customers, takes into consideration where, how, and to whom the parties' services are sold.  Frehling, 192 F.3d at 1339.  "Direct competition between the parties is not required for this factor to weigh in favor of a likelihood of confusion.  Id.  However, Plaintiff and Defendant are both actively engaged in fundraising for the provision of health care services, thus, it is reasonable that there would be overlap in the parties' customer base.

The fifth factor, the parties' respective advertisements and the audiences said advertisements reach, is also considered.  "The greater the similarity, the greater the likelihood of confusion." At this stage in the litigation, Plaintiff has pled facts sufficient to allege a likelihood of confusion.  Additional supporting, or negating, evidence will become available once the parties have commenced discovery in this matter.

    e.  **Defendant's Intent**

The sixth factor in the analysis is the Defendant's intent.  "If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, that fact alone may be enough to justify the inference that there is confusing similarity."  <u>Fla. Int'l Univ. Bd. Of Trustees</u>, 830 F.3d at 1263 (quoting <u>Frehling</u>, 192 F.3d at 1340).  However, "intentional blindness" in deciding to adopt a mark "displays an improper intent."  <u>Frehling</u> at 1340.  A simple trademark search of the readily and publicly available United States Patent and Trademark Office database would have revealed to Defendant the multiple federally registered "AVOW" marks owned by Plaintiff.  Again, as discovery in this matter has not yet commenced, it is unknown whether such a search took place, or whether Defendants were merely intentionally blind by virtue of their failure to even look.  Therefore, it cannot be said that this factor weighs in Defendant's favor.

    f.  **Actual Confusion**

As noted, "evidence of actual confusion is the best evidence of a likelihood of confusion."  <u>Frehling</u> at 1340.  "However, such evidence is not a prerequisite, and thus it is up to individual courts to assess this factor in light of the particular facts of each case."

Id.  "Confusion of individuals casually acquainted with a business is worthy of little weight, . . . while confusion of actual customers of a business is worthy of substantial weight."  Fla. Int'l Univ. Bd. Of Trs., 830 F.3d at 1264 (quoting Safeway Stores, Inc.  v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1167 (11th Cir. 1982).  The understanding that "it is not the number of people actually confused by the marks that is important, but rather the type of person confused" is supported by the case law.  See Frehling, 192 F.3d at 1341; see also Safeway Stores, 675 F.2d at 1167.

Here, Plaintiff has both alleged, and submitted evidence of, actual confusion.  Dkt. 32, ¶¶ 52, 53; and Dkt. 32 Ex. 1.  Some confusion was in the form of social media postings assuming an association between Plaintiff and Defendant.  Whether any of these individuals were actual donors or customers of Plaintiff is unclear.  However, as these postings were made on Facebook, it is more likely than not that these individuals were either already familiar with Plaintiff and its services or that they had been researching information regarding Plaintiff's services and were therefore targeted with Plaintiff's advertisements.  In addition, Plaintiff provided evidence of actual confusion from an actual customer (donor) and volunteer of Plaintiff.  Dkt. 32 Ex. 1.  This instance of confusion is not of an individual who is merely "casually acquainted" with the business but rather someone who is well acquainted with Plaintiff and the services it provides. This is evidence worthy of consideration.  Therefore, Plaintiff asserts this factor indeed weighs in favor of Plaintiff.

g.  **Balancing**

In assessing each of the seven likelihood of confusion factors based on the facts alleged by Plaintiff in its Amended Complaint, Plaintiff has sufficiently demonstrated a likelihood that a reasonable consumer would be confused by the two marks and would likely be confused as to the source of the services that each mark represents.  Therefore, Plaintiff has met its initial burden of sufficiently stating a cause of action for trademark infringement and unfair competition.

**III.    Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion to Dismiss.

Dated: September 12, 2023

Respectfully Submitted,

/s/ Erica L. Loeffler
Erica L. Loeffler, Esq.
Florida Bar No. 852201
erica@lawipgroup.com

Bryan L. Loeffler, Esq.
Florida Bar No. 852341
Bryan@lawipgroup.com

LOEFFLER IP GROUP, P.A.
5659 Strand Court
Suite 102
Naples, FL 34110
(239) 202-2901

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically with the Clerk of Court by using the CM/ECF system and then served on all counsel of record on September 12, 2023.

/s/ Erica L. Loeffler___
Erica L. Loeffler