UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AVOW HOSPICE, INC.,

     Plaintiff,

v.                           Case No.:  2:23-cv-132-SPC-KCD

AVOW FOUNDATION FOR
ABORTION ACCESS, INC.,
AVOW, INC. and AVOW PAC,

       Defendants.

_____/

## OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction and Failure to State a Claim under Rules 12(b)(2) and 12(b)(6) (Doc. 32).

## Background

This is a trademark case.  Plaintiff Avow Hospice is a Florida nonprofit corporation that provides hospice and non-hospice palliative care, offers grief and bereavement services, operates camps and retail stores, and engages in charitable fundraising.  It owns and uses four federal marks in connection with those services:

- AVOW, U.S. Registration No. 3,459,192
- AVOW, U.S. Registration No. 6,234,699
- AVOW KIDS, U.S. Registration No. 6,316,406
- AVOW TREASURES, U.S. Registration No. 5,977,704

Plaintiff began using AVOW and AVOW KIDS in 2007 and AVOW TREASURES in 2016.

Defendants Avow Foundation for Abortion Access, Inc and Avow, Inc. raise funds in support of access to abortion in Texas. Prior to January 25, 2021, they operated under the names TARAL – Education Fund (d/b/a NARAL Pro-Choice Texas Foundation) and Texas Abortion Rights Action League, respectively. Defendant Avow PAC is a political action committee that works to elect champions for abortion access. The organizations chose their new names "because the definition of 'avow,' 'to declare openly, bluntly, and without shame,' captured [the] organization's ethos and attitude towards abortion rights and access." (Doc. 34-1 at 2). All Defendants' advocacy, educational, and political efforts focus on Texas and take place in Texas. They have never sent an employee to Florida, held an event in Florida, or targeted Florida residents with physical or digital advertising.

On May 18, 2022, Defendants' former Executive Director, Aimee Arrambide, testified before Congress in Washington, D.C. The testimony was nationally televised and made headlines, and a photo of Arrambide wearing an Avow facemask was posted to Defendants' Facebook page. (Doc. 32-1). Plaintiff's Chief Philanthropy Officer received an email from a donor asking if Arrambide was associated with Plaintiff, and another individual criticized Arrambide's testimony on Plaintiff's Facebook page. On July 5, 2022,

Plaintiff's attorney asked Defendants to cease using the AVOW mark, but Defendants provided no substantive response.

Defendants use the domain www.avowtexas.org to advertise services and solicit donations. Defendants' website is accessible in Florida, and a small portion (0.34%) of Defendants' donors used a Florida address when donating through the website. One of those donors was Jaysen Roa, Plaintiff's President and CEO. On December 2, 2022, Roa bought a t-shirt bearing the AVOW mark from www.avowtexas.org. A few days later, Roa made a charitable donation through the site. In response, Defendants sent Roa a thank-you letter and receipt, followed by regular emails requesting additional donations.

Plaintiff argues Defendants' use of the AVOW mark on www.avowtexas.org infringes on Plaintiff's trademark rights by confusing the public about the source of Defendants' services and diluting Plaintiff's goodwill. Plaintiff also accuses Defendants of unfair competition, deceptive and unfair business practices, and unjust enrichment. Defendants move to dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction and failure to state a claim.

## Legal Standard

Plaintiffs in federal court must establish a prima facie case of personal jurisdiction. *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021). When considering a jurisdictional challenge under Federal

Rule of Civil Procedure 12(b)(2), courts accept the allegations in the complaint as true. *Id.* A defendant can contest the basis for personal jurisdiction by affidavit and shift the burden back to the plaintiff to produce evidence to support jurisdiction. *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1222 (11th Cir. 2023). If the parties' evidence conflicts, "the district court must construe all reasonable inferences in favor of the plaintiff." *Id.* (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

## Discussion

Courts consider two questions when asked to exercise jurisdiction over out-of-state defendants: "(1) whether personal jurisdiction exists under the forum state's long-arm statute; and (2) whether exercising jurisdiction over the nonresident defendant would violate the Due Process Clause of the Fourth Amendment." *Rowe v. Gary, Williams, Parteni and Gary, P.L.L.C.*, 723 F. App'x 871, 874 (11th Cir. 2018) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). Defendants do not challenge the reach of Florida's long-arm statute, but they argue haling them into a Florida court would violate the Due Process Clause.

The Fourth Amendment's Due Process Clause limits a state's authority over nonresidents. Jurisdiction is proper only if the nonresident defendant has certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting

*Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  In specific jurisdiction cases like

this, courts apply a three-part test:

> [W]e examine whether (1) the plaintiff's claims "arise out of or
> relate to" one of the defendant's contacts with the forum state; (2)
> the nonresident defendant "purposefully availed" itself of the
> privilege of conducting activities within the forum state; and (3)
> the exercise of personal jurisdiction is in accordance with
> traditional notions of "fair play and substantial justice."

*Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022).  Plaintiff

bears the burden of establishing the first two requirements.  If it carries that

burden, Defendants must make a compelling case that exercising personal

jurisdiction would violate traditional notions of fair play and substantial

justice.  *Id.*

Plaintiff's claims arise out of Defendants' use of the AVOW mark on its

website, www.avowtexas.org, which is accessible in Florida.  Defendants' ties

to Florida involve accepting donations from a small number of Florida

residents and selling merchandise featuring the AVOW mark to Roa, all

through the website.  This first requirement is satisfied.

The parties contest the second prong.  In intentional tort cases, like this

one, there are two tests for purposeful availment.  The Supreme Court

articulated the "effects test" in *Calder v. Jones*, 465 U.S. 783 (1984).  It allows

a defendant's single tortious act to establish purposeful availment if the tort:

"(1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Louis Voutton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013) (cleaned up).

Courts can also apply the traditional "minimum contacts" test. It asks whether the nonresident defendant's contacts with the forum state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Voutton*, 736 F.3d at 1357. "In performing this analysis, we identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy these criteria." *Id.*

Under both tests, the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.* In *Licciardello v. Lovelady*, the Eleventh Circuit illustrated the contours of personal jurisdiction in trademark cases by looking at cases from around the country. 544 F.3d 1280, 1284-87 (11th Cir. 2008). For example, the Ninth Circuit observed that "the mere posting of an infringing trademark on a website 'without more' might not

be sufficient to demonstrate that the defendant purposefully aimed his activity toward the forum state." *Id.* at 1287 (citing *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1321-22 (9th Cir. 1998)). It is also not enough that harm in the forum is foreseeable; the defendant must "'expressly aim' his wrongful conduct, individually targeting a known forum resident." *Id.* (citing *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000)). So a court has jurisdiction if the defendant uses a trademark to, for example, extort a forum resident or pass itself off as a forum resident.

Defendants argue Plaintiff cannot satisfy the effects test, and the Court agrees. Plaintiff fails to show that Defendants intentionally directed any tortious conduct towards Florida. There is no evidence that Defendants targeted Plaintiff with the www.avowtexas.org website. In fact, the web address explicitly differentiates Defendants from Plaintiff because Plaintiff has no connection with Texas. And Defendants emails to Roa were incidental to his purchase and donation. They were not aimed at Plaintiff. More to the point, the unrefuted reason Defendants chose the word "avow" in their rebrand was because the word captured the organization's "ethos and attitude." (Doc. 34-1 at 2). There is no evidence Defendants sought to capitalize on Plaintiff's brand and goodwill, to suggest a false association between Defendants and Plaintiff, or to otherwise harm Plaintiff.

Plaintiff also fails to satisfy the traditional "minimum contacts" test. The only contacts between Defendants and Florida—the www.avowtexas.org website, Roa's purchase and donation via the site, and subsequent emails from Defendants to Roa—are not the types of contacts that make jurisdiction proper under traditional jurisdictional standards. If they were, any person could give their home state jurisdiction over Defendants by making a donation or purchase from Defendants' website. "The creation of such *de facto* universal jurisdiction runs counter to the approach the Court has followed since *International Shoe*[.]" *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801-02 (7th Cir. 2014) (holding that an interactive website accessible in the forum state and the inclusion of forum residents on an email list of customers did not establish minimum contacts).

What is more, it would not be reasonable for Defendants to anticipate being haled into a Florida court due to its website. It is not foreseeable that www.avowtexas.org would harm a Florida hospice provider. The domain name itself clearly differentiates Defendants from Plaintiff, which does not claim to have any connection to Texas. There is no reasonable likelihood that Florida residents who access www.avowtexas.org are confused about which Avow the site belongs to. Likewise, follow-up emails to those who make donations or purchases through the site would not foreseeably harm Plaintiff.

The Court notes that Plaintiff presented evidence of two individuals who expressed confusion about Plaintiff and Defendants.  But that confusion did not stem from tortious conduct alleged here—i.e., the use of the AVOW mark on www.avowtexas.org.  "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  Plaintiff is not suing over Arrambide's testimony before Congress.  Thus, the two incidents of confusion are not relevant to the personal jurisdiction issue.  And even if Arrambide's testimony was suit-related conduct, there is no evidence that she intended to harm Plaintiff or that she knew of Plaintiff's existence.

For all these reasons, the Court finds it does not have personal jurisdiction over Defendants and need not evaluate the sufficiency of the Amended Complaint under Rule 12(b)(6).  Because Plaintiff does not ask the Court to transfer this action to a proper venue, the Court will dismiss it without prejudice.

Accordingly, it is now

**ORDERED:**

Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction and Failure to State a Claim under Rules 12(b)(2) and 12(b)(6) (Doc. 32) is **GRANTED**.  Plaintiff's Amended Complaint (Doc. 32)

is **DISMISSED without prejudice**.  The Clerk is **DIRECTED** to terminate

any pending motions and deadlines, enter judgment, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on December 21, 2023.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record